**ATTACHMENT "C"**

**INTRODUCTION**

I, Heath Stewart, being duly sworn and deposed, states as follows:

1.      I am a Special Agent assigned to the Memphis Field Office with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter ATF).   I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 and Title 21 of the United States Code.   I have been employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives since July 26, 2015. I completed Special Agent Basic Training and Criminal Investigative Training at the Federal Law Enforcement Training Center.   I was previously employed as a Deputy with the Vanderburgh County Sheriff Office in Evansville, Indiana from February 2004 through May 2015.   During my time there, I was assigned to the Evansville-Vanderburgh County Drug Task Force as a Narcotics Detective from January 2010 through May 2014.   From November 2012 through May 2014, I was further assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO).   My duties included, but were not limited to, conducting controlled purchases of narcotics through utilization of confidential informants, application for and execution of search warrants on persons, residences, and vehicles, debrief of confidential informants, interview witnesses and proffered defendants. In addition, I analyzed toll records and led investigations that resulted in the interception of wire communications.   I have testified in all levels of court proceedings both at state and federal level.

2.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to

conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. In connection with my official duties, I investigate criminal violations, to include, without limitation, Title 21 United States Code, Sections 841, 842, 846, 930, 952, 960, and 963, and Title 18, United States Code, Sections 371, 922, 924, 1951, 1956, 1957, 1959, and 1961. I have received specialized training in the investigation of criminal street gangs including asset seizure and forfeiture, document and media exploitation, the use of phone and tracker technologies, case development and management, interview and interrogation techniques, informant development and the use of electronic surveillance. During my law enforcement career, I have become familiar with gang member's methods of operation including gang organizational structure, methods of violence, distribution, storage, and transportation of narcotics, and how firearms are obtained, transported, and stored.   I also have learned how gang members transmit information to one another, collect dues/money, and launder money and their methods of conducting surreptitious meetings and communications.   I am personally familiar with, or have used all normal methods of investigation throughout my career including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, and undercover operations, consensual monitoring and recording of both telephonic and non-telephonic communications; and analyzing telephone pen register and caller identification system data.

4. Based on my training, experience, and participation in the investigation of organizations and individuals involved in the distribution of illicit drugs, I know that; (a) the sale of illegal drugs generates large amounts of cash.   Drug traffickers typically utilize this to

purchase assets of all types, including vehicles, jewelry, and real estate. These transactions are often conducted in such a manner as to disguise the identity of the owner of the cash; (b) drug traffickers maintain large amounts of United States currency to finance their ongoing drug trafficking business; (c) drug traffickers frequently possess firearms, which drug traffickers typically utilize in order to protect themselves from law enforcement, as well as from customers and competing drug dealers; (d) drug traffickers commonly maintain books, records, receipts, note ledgers, airline tickets, money orders and other documents related to the transportation and distribution of controlled substances; (e) the aforementioned books, records, etc. are generally maintained where the traffickers have ready access to them. Furthermore, it is not uncommon for drug traffickers to store drug records on computers or other electronic devices; (f) drug traffickers commonly maintain addresses or telephone numbers in books, documents, and/or computerized format which reflect names, addresses or telephone numbers of their associates, sources of supply, and customers involved in their drug trafficking business; (g) drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement; (h) with the advent of the computer age, information relating to the distribution of controlled substances, and the location of proceeds derived from the distribution of controlled substances, is often contained within computers or electronic devices.

     5.     The trafficking of large amounts of narcotics generates large amounts of currency. Individuals in possession of large amounts of currency commonly need to convert currency derived from the trafficking of narcotics to seemingly legitimate or easily concealable forms (e.g., cashier's checks, money orders). In order to convert large amounts of currency to seemingly legitimate or easily concealable forms, money launderers utilize various types of

financial institutions, records of such deposit and wire transfer activity are commonly kept and maintained in the money launderer's residence or business. Individuals involved in money laundering activities commonly keep books, records, ledgers, notes, receipts, address books, telephone books, bank statements, money drafts, letters of credit, money orders and cashier's checks, passbooks, bank checks, deposit bank records, keys to safe deposit boxes, computers and electronic equipment, etc., relating to the acquisitions, movement, conversion, secreting, transfer and disbursement of currency.   Persons involved in this activity often keep records of their illegal money laundering activities for a significant period of time in order to maintain records of money laundering investments and in order to maintain contact with associates involved in illegal money laundering activity.   Records of such illegal money laundering activities are commonly kept and maintained in the money launderer's residence or business.

      6.      Individuals involved in money laundering activities commonly conceal in their residences, businesses, safe deposit boxes and other locations, access to which is controlled by them, currency, cashier's checks, money orders, jewels and precious metals, stock, bonds, and documents pertaining to real property, vehicle, aircraft and boat ownership such as title documents, and other financial and negotiable instruments, as well as records identified above relating to the acquisition, conversion, movement, secreting, transfer and disbursement of illegally obtained funds.   Searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following: (a) computer storage devices (like hard disks, diskettes, etc.) can store millions of documents.   Additionally, a suspect may try to conceal criminal

evidence; he or she might store it in random order with deceptive file names; (b) searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data; (c) searching a computer system may require a range of data analysis techniques.  In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.

7.     In other cases, however, such techniques may not yield the evidence described in the warrant, criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information.  These steps may require agents to conduct more extensive searches such as scanning areas of the disk not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant.

8.     By virtue of my employment with ATF, I am authorized to conduct investigations into violations of the Controlled Substances Act.

9.     I have participated in the investigation summarized in this affidavit concerning violations of Title 21, United States Code, Sections 841(a) (1) and 846 (drug distribution and conspiracy), Title 21, United States Code Section 853 and 856 (the use of real property to facilitate the unlawful sale of narcotics, and Title 18, United States Code, Sections 1956 and 1957

(laundering proceeds of controlled substances violations).  I have received information about matters relevant to this investigation from, among other sources, conversations with and reports by other Agents.   I am thoroughly familiar with the information contained in this affidavit, either through personal investigation or through communications with other agents and law enforcement investigators who have interviewed individuals or personally have obtained information, which they have, in turn, reported to me.  On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts recited below.

10. Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish the necessary foundation in order to obtain the particular warrant at hand.

11. This affidavit is incorporated as Attachment "C" to an application for a search warrant for the premises described in Attachment "A" (Property to be Searched) to search for and seize the items described in Attachment "B" (List of Items to be Seized).  Attachment "A" and Attachment "B" are also incorporated into the warrant application.

12. Because this is an ongoing investigation, and as a precaution to assure the safety of the agents and officers involved in executing the search and arrest warrants in this mater, your affiant requests that this application and affidavit be **filed under seal** so that the aforementioned targets are not prematurely alerted to the existence of this investigation.

## II.

## OVERVIEW OF INVESTIGATION

13.   This investigation concerns illegal drug sales and the laundering of drug proceeds by multiple individuals in the Western District of Tennessee.  The crimes under investigation include, among others, the distribution of and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); conspiracy to possess and distribute controlled substances, in violation of 21 U.S.C. § 846; the use of real property to facilitate the unlawful sale of narcotics, in violation of 21 U.S.C. § 853 (a)(2) and § 856; and conspiracy to launder and the laundering of drug proceeds, in violation of 18 U.S.C § 1956 and §1957, bank fraud, in violation of 18 U.S.C. §1344 (hereinafter referred to as the "Specified Unlawful Activities").

14.   During this investigation, **Jimmy GAUSE (**hereinafter **GAUSE)** has been identified as a distributor of marijuana to the street gang Fast Cash.

15.   The subject listed above has been identified during the investigation of the Specified Unlawful Activities through physical surveillance in conjunction with wire and electronic communications.  These techniques have revealed that narcotics and/or drug proceeds were being stored at **GAUSE** residence previously at 3661 Windermere Rd, Memphis, Tennessee. Your affiant, based on the information detailed herein, believes that evidence and instrumentalities of the Specified Unlawful Activities will be located at **4659 Royal View Drive, Memphis, Tennessee**.  On November 25, 2018, GAUSE filed a change of address from 3661 Windermere Rd to 4659 Royal View Drive, both respectively in Memphis, Tennessee through the United States Postal Service (USPS).  On July 23, 2019, GAUSE was indicted by a federal grand jury in the Western district of Tennessee for drug conspiracy.  Based upon these facts and information as

well as electronic surveillance, Agents believe GAUSE resides at 4659 Royal View Drive.

## III.

## PRIMARY CONSPIRATORS AND PROBABLE CAUSE

16. Beginning in January 2017, Agents with ATF and Detectives with the Multi-Agency Gang Unit (MGU) began reviewing social media accounts of individuals affiliated with the street gang Fast Cash operating in the Memphis, Tennessee area.   Fast Cash is better described as a hybrid or neighborhood street gang.   Hybrid/Neighborhood Gangs are described as a loosely organized group of individuals from a common area in the city with common interests.  This group will meet the criminal elements of a Criminal Street Gang when individuals associated with the group begin participating in criminal, threatening or intimidating activity within the community.   Usually three (3) or more individuals will come together to commit a crime, typically a crime of opportunity.   Examples of these crimes have shown to be robbery, home invasion, murder, burglary, distribution of narcotics, and bank fraud all of which contribute to the gang in some way.   This could bring status to the individual and boost the street credibility of that individual among other members, or in the case of a narcotics robbery, provide other members with narcotics to distribute.   A Hybrid/Neighborhood Gang could have the following characteristics:   A gang name and/or symbol, some type of hierarchy, a geographical location, some type of meeting pattern and some defining moment for an individual to become a member of the gang.   Some Hybrid/Neighborhood Gangs will have ties to nationally based gangs and will imitate those gangs in regards to clothing, crime style and gang name.

17. The investigation has shown that **GAUSE**, among others, have been engaged in the

distribution of large quantities of marijuana in the Western District of Tennessee. On January 10, 2018, Shelby County Sheriff Office Narcotics team, assisted by Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives, executed a search warrant at 3661 Windermere Rd, the residence of **GAUSE**. During the search, Agents located approximately three (3) pounds of marijuana and recovered six (6) firearms. **GAUSE** was subsequently arrested on this date. Then on April 6, 2019, **GAUSE** was stopped on a traffic stop with Kevin WYNN, a known member of Fast Cash who was indicted on June 27, 2019 for gun and drug related charges by a federal grand jury in the Western District of Indiana. During the stop, **GAUSE** and WYNN were found to be in possession of approximately 188 grams of marijuana and approximately $1000.00 of US Currency suspected of being drug proceeds. **GAUSE** was again arrested on this date and charged in state court.

**GAUSE** was intercepted on wire and electronic communications with Cordney SMITH and Carterrio BOGAN. Specifically, on December 16, 2017, BOGAN was surveilled going to 3661 Windermere Rd to obtain marijuana after inquiring with **GAUSE** on his cellular device through Target Telephone 1 of this investigation. Additionally, On April 18, 2018, SMITH spoke with **GAUSE** about losing a marijuana package in the mail. Agents and United States Postal Inspectors intercepted packages of marijuana going to SMITH through this investigation which he is referencing in the call to **GAUSE**.

## IV.

### Probable Cause to Search 4659 Royal View Drive, Memphis, Tennessee

19. On August 1, 2019, Law enforcement went to the residence of 4659 Royal View Drive with a federal arrest warrant for GAUSE. Upon making contact with a female at the door, law enforcement smelled a strong odor of raw marijuana emitting from the residence. SA Stewart identified the female as Jimilya WALKER. WALKER stated she resides at his location. SA Stewart stated there is an overwhelming odor of raw marijuana inside the home and based upon knowledge of the investigation that GAUSE is a distributor of marijuana, SA Stewart asked for consent to search the residence. WALKER advised that she had about nine (9) grams in the home that belong to her. SA Stewart stated the smell indicated an amount greater than nine grams to which WALKER replied, "Well I don't know what he does." SA Stewart advised WALKER that a search warrant would be applied for.

20. SA Stewart inquired with GAUSE if he resided at the residence to which GAUSE stated he did not. SA Stewart asked GAUSE about filing a change of address to this location from Windemere Dr. GAUSE turned away and didn't respond.

## V.

### CONCLUSION

30. Based on your affiant's training, experience, and the foregoing observations and facts, your affiant believes that there is probable cause to believe that the items described in Attachment "B" to the application for a search warrant in this matter will be found in the premises described in Attachment "A" to the application.

31. For the reasons set forth above, the Government respectfully requests a search warrant for the premises and the residences previously described and therein to search for and seize items as described in Attachment "B", including, but not limited to: Illegal Drugs, Receipts, Notes, Ledgers, Books, United States Currency, Computers, and/or Computerized Records.

32. I also seek permission to remove and conduct an off-site search of the aforementioned computer and storage media from their location. This permission is requested due to the need for special expertise in examination of the computer and storage media to obtain any pertinent evidence of the aforesaid offenses.

33. WHEREFORE your affiant request that a warrant be issued pursuant to rule 41 of the federal Rules of criminal Procedure to search the premises and seize those items listed in Attachment "B."

_____
Heath Stewart, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before
me this 1st day of August, 2019

_____
Charmiane G. Claxton
United States Magistrate Judge